# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **In Re Subpoena Served Upon**<br>**INTERNATIONAL CODE**<br>**COUNSEL EVALUATION**<br>**SERVICES GROUP** | **Civil Action No. _____** |

# OSMOSE, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION
# TO QUASH SUBPOENA AND MOTION FOR PROTECTIVE ORDER

## TABLE OF CONTENTS

I.   Background ...................................................................................................................1
II.  Facts ..............................................................................................................................4
   A.   Plaintiffs' Subpoena Must Be Quashed Or Modified ..................................6
      1.   Osmose Object to the Production of Any Proprietary Data in Response to Plaintiff's Subpoena .......................................................7
      2.   Objection to Location for Production......................................................10
   B.   In The Alternative, Osmose, Inc. Seeks A Protective Order To Cover Its Proprietary Data ........................................................................................11
III. Conclusion ..................................................................................................................13

## I.   BACKGROUND

This Motion relates to a Subpoena issued from this Court by Cary Chapin, et al. ("Plaintiff") to an entity improperly identified as the International Code Counsel Evaluation Services Group. (*See* Declaration of Robert S. Thompson being filed contemporaneously herewith, "Thompson Decl., ¶ 3, Ex. "A")[1]. Although not made clear on the face of the Subpoena, this Civil Action is not pending in this Court, but rather is pending in the United States District Court for the United States Virgin Islands.

By letter dated March 11, 2014, ICC Evaluation Service, LLC (hereinafter "ICC-ES") sent a letter to Osmose, Inc. ("Osmose") advising it of its receipt of the Subpoena. (Thompson Decl., ¶ 4, Ex. "B"). The letter indicated that the ICC-ES intended to comply with the Subpoena unless Osmose promptly moved to the proper court for a protective order. However, the ICC-ES offered to allow Osmose to inspect the documents after they had been identified and assembled. (Thompson Decl., ¶ 5, Ex. "B"). Counsel for Osmose responded to the ICC-ES letter. In this letter, Counsel for Osmose noted that it objected to the production of any proprietary data outside of a court order or a protective order. (Thompson

---

[1] The correct legal name is ICC Evaluation Service, LLC.

1

Decl., ¶ 6, Ex. "C").

Furthermore, counsel noted that there appears to be no request in the Subpoena that would call for production of any of Osmose's proprietary data. (Thompson Decl., ¶ 6, Ex. "C"). Therefore, counsel for Osmose requested the opportunity to inspect the documents that ICC-ES believed were responsive to the Subpoena as referenced in Paragraph 2 of the ICC-ES letter to determine if filing a motion for protective order to protect its proprietary information would be necessary. (Thompson Decl., ¶ 7, Ex. "C"). On March 19, 2014 counsel for Osmose sent an e-mail to the ICC-ES seeking to determine if a protective order would need to be sought. (Thompson Decl., ¶ 8, Ex. "D"). The ICC-ES responded and advised that someone would be in touch shortly. (Thompson Decl., ¶ 9, Ex. "F"). The next day, March 20, 2014 the ICC-ES advised Osmose's counsel that they were attempting to locate Plaintiffs' attorney before responding to Osmose letter. (Thompson Decl., ¶ 10, Ex. "F"). Having heard nothing by Monday, March 24, 2014 counsel for Osmose once again reached out to the ICC-ES for an update. (Thompson Decl., ¶ 11, Ex. "G"). Thereafter, ICC-ES' outside counsel responded indicating that she had not been able to speak with Plaintiffs' counsel. (Thompson Decl., ¶ 12, Ex. "H"). Counsel for Osmose again opined that the Subpoena did not seem to request any

confidential data and repeated his desire to confer before any response was made related to the Subpoena. (Thompson Decl., ¶ 13, Ex. "I"). On or about Tuesday, March 24, 2014, counsel for Osmose was able to speak with the counsel for the ICC-ES. (Thompson Decl., ¶ 14). Following that conversation, it was still unclear what documents the ICC-ES was planning to produce pursuant to the Subpoena. (Thompson Decl., ¶ 14). However, it was represented that the ICC-ES did not have the man power to search through files to find documents specific to the request, but it was easier to simply hand over entire files that were related to the subject matter. (Thompson Decl., ¶ 14). In this case, The ICC-ES has indicated that those files would be those related to Evaluation Reports nos. ESR-2240 and ESR-2667. (Thompson Decl., ¶ 15). These files are very likely to contain information beyond the scope of what was requested, and include confidential data belonging to Osmose, Inc. ICC-ES agreed to allow Osmose to view any documents before they were produced. (Thompson Decl., ¶ 15). Nevertheless, it was decided that Osmose would go forward with an objection to the subpoena and move for protective order to protect its proprietary data. (Thompson Decl., ¶ 16).

For the reasons set forth herein, Osmose, as the stakeholder of the documents which are the subject of the Subpoena, moves for an Order to

Quash the Subpoena issued to ICC and requests that this Court issue a Protective Order to prohibit the disclosure of Osmose's proprietary data.

## II. FACTS

Osmose is a privately owned corporation headquartered in Buffalo, New York comprised of utility services, wood preservation technologies and railroad services.  (*See* Declaration of Robert Wangel, ¶ 3).  Osmose has long been a leader in the research and development of new products and services in all areas of lumber preservation technology.  (Wangel Decl., ¶ 4).  Osmose has spent significant money and resources to bring its micronized copper wood preservation technology to the market in 2006, selling that treatment to wood treaters who manufacture and sell treated wood to distributors, builders and retailers who then sell the treated wood to contractors and/or the general public. (Wangel Decl., ¶ 5). Prior thereto, Osmose spent several years developing its micronized copper wood preservation technology including substantial laboratory and field testing at Osmose's own facilities as well as University and other third-party testing facilities using AWPA, ASTM and other industry standards for testing. (Wangel Decl., ¶ 6).

ICC-ES performs technical evaluation for code compliance providing regulators in construction professionals with clear evidence that products

comply with codes and standards. (Wangel Decl., ¶ 7). Beginning in and around 2004 Osmose begin submitting its test data related to its micronized cooper wood preservatives to the ICC-ES for purposes of gaining code approval. (Wangel Decl., ¶ 8). Osmose submitted this information confidentially as permitted by the ICC-ES. (Wangel Decl., ¶ 9). Since that time, Osmose has continued to provide the ICC-ES with its test data related to micronized copper wood preservatives as needed to obtain code approval. (Wangel Decl., ¶ 10). At issues in this matter, is the code approvals obtained by Osmose from the ICC-ES related to its Osmose Micropro™/LifeWood™ and Sustain Preservative Treated Wood™ as referenced in Report ESR-2240, and Osmose's Advanced Guard™/Hi-Bor™ preservative-treated wood as referenced in Report ESR-2667. (Wangel Decl., ¶ 11).

Pursuant to the Rules of Procedure for Evaluation Reports issued by the ICC-ES, "data and any evaluation report file or application file is considered proprietary." (Wangel Decl., ¶ 12, Ex. "A"). The rules further provide that "the data will not be disclosed externally by the ICC-ES unless they obtain written consent of the applicant or, with notice of the applicant, pursuant to Subpoena issued by a court or other governmental agency of competent jurisdiction." (Wangel Decl., ¶ 13, Ex. "A").

As data that is subject to the Subpoena belongs to Osmose, Osmose both objects to the Subpoena and in the alternative, seek to impose a protective order on any confidential data that must be produced by ICC-ES to the Plaintiffs.

**A.     PLAINTIFFS' SUBPOENA MUST BE QUASHED OR MODIFIED**

Pursuant to Federal Rule Civil Procedure 45(c)(3)(A), the Court must quash or modify a subpoena that:

(i)    Fails to allow reasonable time to comply;

(ii)   Requires a person who is neither a party nor a party's officer to travel more than a 100 miles from where that person resides, is employed or regular transacts business in person…

(iii)  Requires disclosure of privileged or other protected matter if no exception or waiver applies; or

(iv)   Subjects a person to undue burden.

This Subpoena violates at least two (2) of the four (4) of these safeguards and, therefore, must be quashed. The specific requests number 1 through 11 must be quashed under Fed. R. Civ. P. 45(c)(3(A), as shown below.

**1.   Osmose Object to the Production of Any Proprietary Data in Response to Plaintiff's Subpoena**

The Subpoena issued by Plaintiffs seeks documents in nine (9) separate categories. (Thompson Decl., ¶ 3, Ex. "A").  Although extremely broadly drafted, none of the categories directly requests Osmose's proprietary data which was provided to ICC-ES in support of the approval of ESR-2240 or ESR-2667.  However, based on communications with the ICC-ES, Osmose is concerned that such proprietary data may be produced. The requests are as follows:

*(1)   Any applications for Great Southern to become a member or participant or in any way affiliated with or recognized by your organization from 2000 to the present.*

**RESPONSE**:  Nothing in this Request would call for or seek to elicit confidential data provided by Osmose.

*(2)   Documents evidencing any acceptance of Great Southern to treat wood and/or claim associated with or recognition by, or other designations by your organization from 2000 to the present.*

**RESPONSE**:  To the extent that ICC-ES can glean what this Request is seeking, it clearly does not call for or seek to elicit any confidential data provided by Osmose in support of ESR-2240 or ESR-2667.

7

*(3) What requirements Great Southern has to meet in order to stay recognized by or listed by your organization from 2000 to present.*

<u>RESPONSE</u>:  Again, nothing here asks for Osmose's proprietary data.

*(4) The requirements by your organization to treat white pine from 2000 to the present.*

<u>RESPONSE</u>:  Again, this Request while extremely broad and vague, does not seek information relating to underlying data used in support of Osmose's code approval.  At best, this Request would solicit documents such as the ESR Reports themselves which documents are already public.

*(5) All documents received concerning the Great Southern Jessup plant from 2000 to the present.*

<u>RESPONSE</u>:  Again, this Request while extremely broad and vague, does not seek information relating to underlying data used in support of Osmose's code approval.  At best, this Request would solicit documents such as the ESR Reports themselves which documents are already public.

*(6) Any communications between you and Great Southern, Osmose, Inc. Timber Products Inspection, Amware Logistic Services, International Co-Counsel Evaluation Service Group, Evergreen Treatment Company from 2003 to the present.*

<u>RESPONSE</u>:  The term "communication" is not defined by Plaintiffs.

8

Certainly a reasonable interpretation of this Request would be letters, e-mails and other written or electronic correspondence by and between those parties.  Data submitted to ICC-ES by Osmose should not be considered a "communication."  Given the proprietary nature of this information, such data should not be produced in response to such a broad request particularly when there is no showing that such information would have any relevance to Plaintiffs' Claims in the Virgin Islands.

*(7)   Documents evidencing any acceptance of Great Southern to treat wood and/or claim associated with or recognition by, or other designations by your organization from 2000 to the present.*

**RESPONSE**:  To the extent that ICC-ES can glean what this Request is seeking, it clearly does not call for or seek to elicit any confidential data provided by Osmose in support of ESR-2240 or ESR-2667.

*(8)   Any revocation or threats of revocation as to Great Southern.*

**RESPONSE**:  This Request should have no bearing on any information or data from Osmose.

*(9)   Any documents signed by Great Southern relating to its being listed by your organization or any agreements or statements as to treating wood from 2000 to the present.*

**RESPONSE**:   Again, no Osmose information need be produced

9

pursuant to this Request.

***(10) Documents sufficient to identify the person or persons in your organization with the most knowledge of issues related to Great Southern's treatment and sale of wood into the Caribbean from 2000 to the present.***

**RESPONSE**:  Again, this Request should not impact any information related to Osmoses, Inc.

Based on conversations with counsel for the ICC-ES, Osmose is concerned that the ICC-ES will chose the path of least residence in responding to this Subpoena and simply produce their entire file relating to Reports ESR-2240 and ESR-2667 as indicated in the March 11, 2014 letter, regardless of whether all of that material, specifically including Osmose's proprietary data, is even responsive to the Subpoena itself.  Osmose would objects to production of any of its confidential data pursuant to this Subpoena as it is not responsive.

### 2. Objection to Location for Production

This Subpoena was issued by this Court in the District of Columbia.  However, the Subpoena itself demands production be made at Plaintiff's lawyer's office on the island of St. Thomas in the United States Virgin Islands.  Pursuant to Fed. R. Civ. P. 45(c)(2) the Subpoena may command a

production of documents at a place within a hundred (100) miles of where the person resides, is employed or regularly transacts business in person. Here, the office of Plaintiffs' counsel in the Virgin Islands is clearly a hundred (100) miles outside the jurisdiction of this Court or from any office of the ICC-ES.

**B.     IN THE ALTERNATIVE, OSMOSE, INC. SEEKS A PROTECTIVE ORDER TO COVER ITS PROPRIETARY DATA**

In the alternative, Osmose seeks a protective order to protect its confidential data. Federal Rule Civil Procedure 26(c) specifically provides that a party may file a motion for protective order, which includes, among other protections:

> (a)  forbidding the disclosure or discovery;
>
>   …..
>
> (b)(g) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only a specified way.

The District Court may issue a protective order if, "Good cause is shown, in such an order 'not subject to heighten scrutiny." *In Re: Alexander Grant and Company Litig*. 820 F.2d. 352, 355 (11th Cir. 1987). Here, Osmose seeks a protective order requesting that discovery of its proprietary data and confidential information not be had at all. First, as

11

explained above, there is nothing in the Subpoena requests that specifically calls for or seeks to elicit production of documents from the ICC-ES related to Osmose's underlying scientific data.  Furthermore, before such sensitive proprietary information is provided to Plaintiffs, there should be some showing that the information sought is remotely relevant to Plaintiffs' claims.  Based on Osmose's limited understanding of Plaintiffs' claims in the underlying action, it is apparent that there is no allegation that the underlying chemical manufactured by Osmose was defective in any way. (Wangel Decl., ¶ 14).  Instead, the allegation appears to be simply that the wood treater in this case, Great Southern Wood Treaters, Inc., failed to infuse the wood at issue with the proper level of chemical as required Osmose and/or the code requirements. (Wangel Decl., ¶ 15).

Accordingly, the underlying data used to obtain code approval for the ICC-ES Reports is not relevant in any way to Plaintiffs' claims.  As such, no such data should be produced to Plaintiffs in this case.  In the alternative, if this Court determines that some or all of the proprietary data should be produced by the ICC-ES to the Plaintiffs, Osmose would request that such documents be subject to very strict protections regarding their use in the litigation, who may view the documents, limitation of duplication and ultimate return or destruction following the litigation as

part of a comprehensive Confidentiality and Protective order.

### III.   CONCLUSION

For all the foregoing reasons, Osmose respectfully objects to the subpoena issued to the ICC-ES and requests that it be quashed or modified. Further, to the extent proprietary documents are ordered to be produced, Osmose requests that this Court issue a Protective Order to protect the disclosure of such proprietary documents.

This 28th day of March, 2014.

Respectfully submitted,

*/s/ Cynthia Taub*
Cynthia Taub
(DC Bar # 445906)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue NW
Washington, DC 20036
Telephone:  (202) 429-8133
ctaub@steptoe.com

HAWKINS PARNELL
THACKSTON & YOUNG, LLP
Robert S. Thompson
4000 SunTrust Plaza
303 Peachtree Street, NE
Atlanta, Georgia 30308-3243
Telephone: (404) 614-7400
Facsimile:  (404) 614-7500
rthompson@hptylaw.com

*Counsel for Osmose, Inc.*